GEORGE M. HANCOCK AND RUBY HANCOCK, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31146.   Promulgated May 9, 1952.

*J. A. McIntosh, Esq.*, for the petitioners.
*Michael J. Clare, Esq.*, for the respondent.

OPINION.

Johnson, *Judge:* Petitioners seek to avoid tax liability on the dividends and bonus upon the general ground that the transaction as a whole was a purchase of treasury stock by the corporation. They argue that the entire arrangement was a plan worked out by the corporation's accountant for the retirement of the stock held by Duff and Winkle. Specifically, they allege that the dividends and bonus were used by the corporation to pay for the stock. There is no factual basis for the contentions of petitioners. To the contrary, the evidence establishes that there was a purchase of the stock from Duff and Winkle by petitioner, and dividend and bonus payments thereafter on the basis of ownership of the stock by petitioners.

The fact that the corporation's directors, including petitioner, followed without question the plan advanced by the accountant for the acquisition of the stock does not relieve petitioner of the liability for the tax consequences of the transaction. That petitioner was aware

that he, and not the corporation, was purchasing the stock is shown beyond reasonable doubt by the evidence before us.

The resolution of May 14, 1948, provided in unequivocal terms for the granting of a loan to petitioner for the sole purpose of purchasing the stock held by Duff and Winkle, and for the repayment of the loan as soon as possible. The minutes, which were prepared by the corporation's counsel, were signed by petitioner and he must be charged with knowledge of the contents of the resolution even though, as he testified, he signed the minutes without reading them. Thereafter petitioner, as president of the corporation, negotiated a loan to put the corporation in funds to comply with the terms of the resolution and the amount was loaned to petitioner. The check issued to petitioner for the amount of the loan was deposited in his personal bank account, and on the same day petitioner gave to Duff his personal check for $16,455, which was $1,000 in excess of the amount borrowed from the corporation, in payment of the stock. There is no suggestion here that the excess of the consideration petitioner paid for the stock over the borrowed money did not come from personal funds of petitioner, or that petitioner regarded himself to be indebted to the corporation for the additional amount. In consideration of the payment, Duff transferred his shares to petitioner and thereafter the certificate for the stock, together with the certificate for the one share transferred by Winkle, was reissued, 56 shares to petitioner and one share to his wife.

The course of action of Duff, who did not testify at the hearing, and nothing was offered to establish that he was unavailable as a witness, shows particularly in the light of the fact that he signed the resolution, that he intended to sell the stock to petitioner. Any misunderstanding petitioner might have had about the purport of the resolution, and the plan of the accountant, was cleared up before the transaction between him and Duff was consummated. To hold otherwise would require that we ignore completely the voluntary acts of petitioner. Unless changed by what occurred thereafter, delivery of the consideration and stock certificates closed the transaction for the sale of the stock by Duff and Winkle to the petitioner.

As late as October 14, 1948, when the corporation's return for the fiscal year ended July 31, 1948, was filed, the transaction was treated by petitioner and the corporation as a purchase by the former. Pursuant to a resolution adopted at a meeting of the board of directors of the corporation on July 13, 1948, the minutes of which were signed by petitioner as president and by his wife as secretary, a dividend of $90 a share was paid. Petitioner's personal account on the corporation's books was credited with $10,080 on the basis of ownership of

112 shares of stock and his wife received a check for $90 for the one share outstanding in her name. Nothing here is opposed to a conclusion that the minutes of the previous meeting, which were approved by the directors on July 13, 1948, did not relate to the meeting held on May 14, 1948, at which the loan to petitioner was authorized. The return reflected the dividend payments to stockholders, reported 113 shares of stock outstanding at the end of the year, none of which was listed as treasury stock, and claimed as a deduction the amount of $5,833.05 for the bonus paid to petitioner. The course of conduct thus taken is consistent with full and complete ownership by petitioner and his wife of the stock involved herein.

The adjusting entries made in the corporation's books after the return was filed were nothing more, in the final analysis, than an effort to avoid tax consequences of the dividend and bonus payments by making it appear that the corporation and not petitioner purchased the stock from Duff and Winkle. While the intent of the adjusting entries was to show that the corporation purchased all of the stock, including the one share reissued to Ruby Hancock, petitioner admitted by his testimony at the hearing that the cash dividend received by her was taxable. The fact that the corporation could have purchased the stock is not controlling, for the issue must be decided upon what was done rather than by what might have been done. The corporation, which must be treated as an entity separate and distinct from petitioners, its sole stockholders, *Moline Properties, Inc.* v. *Commissioner*, 319 U. S. 436, never acted to purchase the stock. Obviously, the filing of the amended return in the minute books, action not shown to have been taken under the direction of the board of directors, was not sufficient for that purpose, particularly in the light of the fact that the resolution of May 14, 1948, specifically referred to the transaction as a purchase by petitioner and that the acquisition had been fully consummated with the seller.

The accountant who made the adjusting bookkeeping entries did not discuss the matter with the corporation's attorney, or its previous accountant, and therefore did not have the benefit of their ideas on what the parties intended. That he was not interested in their views is illustrated by his concluding testimony at the hearing that:

* * * George Hancock at that time was somewhat strapped for money, so he didn't want to get more expenses on his shoulders because he didn't know which way he was going at that particular time, so I was trying to help him out as best I could.

In *Commissioner* v. *Court Holding Co.*, 324 U. S. 331, the taxpayer, a corporation all of whose stock was held by two individuals, entered into an oral agreement to sell its only asset and received a payment

on the purchase price. When meeting to reduce the agreement to writing, the taxpayer's attorney informed the purchaser that the sale could not be concluded because of the tax liability it would impose upon the seller. The next day the corporation declared a liquidating dividend and thereafter the sale was made by the former stockholders, as sellers. The Court held that the corporation and not the individuals sold the property and was liable for tax on any gain realized. In reaching its conclusion the Court said, among other things:

* * * A sale by one person cannot be transformed for tax purposes into a sale by another by using the latter as a conduit through which to pass title. To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress.

A like question was considered in *United States* v. *Cumberland Public Service Co.*, 338 U. S. 451. Here petitioners substituted a different buyer after the sale was fully consummated and thereby changed both the substance and the form of the transaction. The rationale of these decisions of the Supreme Court oppose such a method to minimize tax liability. There remains the question of whether the adjusting bookkeeping entries altered the right of petitioners to receive and retain the dividends and bonus.

The general rule is that the declaration of a dividend creates a debtor-creditor relationship between a corporation and its stockholders, and that the directors have no power to rescind or revoke their action. *Estate of Lloyd E. Crellin*, 17 T. C. 781, wherein the dividends were repaid by the stockholders within the year received after revocatory action was taken by the directors, and we held that the amounts were taxable. The rule in Ohio is that the debt created by a dividend declaration is "beyond the control of both the stockholders and directors." *Mitchell* v. *Bookwalter Wheel Co.*, 4 Ohio N. P. N. S. 609, affd. 75 O. S. 639. Here neither the stockholders nor the directors, as such, took any action to revoke the resolutions declaring the dividend and bonus. The dividend and bonus were credited to petitioner's personal account on the books of the corporation and served to liquidate the loan he made from the corporation to buy the stock. Thus, he not only received the amounts but used them for his own benefit in the purchase of the stock.

No useful purpose would be served by a further discussion of the question. It is sufficient to say that we find no error in respondent's action in including the dividends and bonus in gross income of petitioners. Accordingly,

*Decision will be entered for the respondent.*